WYNN *v.* STATE.

(*Nashville*, December Term, 1943.)

Opinion filed June 10, 1944.

326.

Pat J. Lyons, of Memphis, for plaintiff in error.

Nat Tipton, Assistant Attorney-General. for the State.

Mr. Chief Justice Green delivered the opinion of the Court.

The defendant has been convicted of housebreaking and has appealed in error to this court.

The proprietor of a restaurant in Memphis, after closing his place of business about eleven o'clock at night, on his way home, was held up by three negroes at the point of a pistol and a small sum of money and a bunch of keys were taken from his person. He received a blow in resisting the assault. The negroes left him and he reported the matter to the police, telling them that the keys to his place of business were taken and that it was probably the intention of those assaulting him to enter it. The officers to whom the report was made undertook to watch this place of business for a time but were called

away for other duties and later in the night the restaurant was entered, the safe opened, and about $2,000 in money was taken. The doors to the house and safe were opened with keys, without doubt the keys taken from the prosecutor's person. The safe was an old type affair, a sort of strong box, that was locked with a key. The bunch of keys was never found.

The record does not show just how suspicion of the police was directed toward the defendant, but he and two other negroes were taken into custody and charged with breaking into this restaurant. They were detained in the police station three days without being taken before a magistrate. They were held incommunicado during this time. On the third day they were taken before a magistrate and in open court pleaded guilty.

Shortly before he was taken in to the magistrate's court Wynn made a confession, as did the other two negroes. In their confessions the three admitted the holdup of the prosecutor, the entry of the restaurant, and the stealing of the money, and said that the money was carried to Wynn's house where it was divided among these three negroes and another negro who joined them before the entry into the restaurant.

A pistol was taken from the prosecutor's place of business and one of the negroes told the officers where this pistol could be found. Later the officers recovered the pistol from the place mentioned and it was identified by the prosecutor.

The record abundantly shows that all three of these negroes just after the robbery began spending money in sums quite large for such men, buying furniture, jewelry, watches, fine shoes, and other articles.

The three negroes were convicted in the criminal court but Wynn alone has appealed. The chief contention made

in his behalf is that the confession made by him to the officers was obtained under such circumstances as to render it inadmissible, and that for this reason a new trial should be granted.

When the confession was offered in evidence by one of the officers to whom it was made, objection was raised to its admission and the court entered into a preliminary inquiry to determine that question. This was proper practice. The admissibility of a confession is not a matter for submission to the jury. The rule was announced at an early date in this State that it was reversible error for the trial judge to submit to the jury the question as to whether the party making the confession was influenced by hope or fear. *Boyd* v. *State*, 21 Tenn., 39. This was approved in *Self* v. *State*, 65 Tenn., 244, and has been approved recently in *Omohundro et al.* v. *State*, 172 Tenn., 48, 109 S. W. (2d), 1159.

In *Self* v. *State* the Court said:

"When confessions are offered as evidence, their competency becomes a preliminary question, to be determined by the court. This imposes upon the presiding judge the duty of deciding the fact whether the party making the confession was influenced by hope or fear. This rule is so well established, that if the judge allow the jury to determine the preliminary fact, it is error, for which the judgment will be reversed: *Boyd* v. *The State*, 2 Humph., 39. These are elementary principles too long established and followed to be now questioned." (Page 253 of 65 Tenn.).

We are aware that in several jurisdictions it is left to the jury, if the evidence is conflicting, to say whether a confession was voluntary. The cases are collected in a Note, 85 A. L. R., 870.

We adhere, however, to the rule long since established in this State, which has the support of many courts of high repute and of authoritative writers on the law of evidence. Wigmore on Evidence, Third Edition, sec. 681; Editorial Note, 85 A. L. R., 870. The practice is like that obtaining in determining the admissibility of a dying declaration, *Dickinson* v. *State*, 139 Tenn., 601, 202 S. W., 922, or of evidence procured in a search. *Goodwin* v. *State*, 148 Tenn., 682, 257 S. W., 79.

 A confession being admitted, its weight is of course a matter for the jury. That is, the jury is to determine whether defendant made the confession and whether the statements contained in it are true. To aid them in resolving these questions the jury may hear evidence of the circumstances under which the confession was procured.

The only testimony introduced before the trial judge as to the circumstances under which this confession was obtained showed that the defendant and the other negroes received no mistreatment while being held in custody and that their confessions were freely and voluntarily made. The officers in charge of them (and later the negroes themselves) said that they were examined three or four times at intervals. There was no continuous grilling such as occurred in *Ashcraft* v. *State* (Unreported, 1943), and on appeal in the United States Supreme Court 88 L. Ed. 858.

At the conclusion of this preliminary hearing objection was made to the admission of the confessions solely on the ground that the defendant and the other negroes were illegally detained for about 72 hours before they were brought into the magistrate's court. There was no suggestion in the preliminary hearing of any brutal treatment of any of these negroes. When the jury was

recalled the confessions were read to them and the defendants then testified in their own behalf.

In their own testimony defendants denied any participation in the holdup of the prosecutor or in the entry of his restaurant and said they knew nothing of either incident until they were arrested. They introduced some evidence of an alibi.

The negroes, however, testified that they were cursed and whipped by the officers while being held in custody and threatened with further whippings, and that they made the confessions to avoid more punishment.

Testifying in rebuttal the officers denied that they made any threats or used any violence whatever on the negroes. The officers justified the detention of the negroes before taking them into the magistrate's court by saying they were holding them for investigation.

Since there was no proof of any mistreatment of defendant, nor of whipping nor of threats of whipping while in custody, offered on the preliminary hearing, the trial judge was right in admitting the confession, unless the mere fact of the detention of defendant during the 72 hours rendered the confession inadmissible. That is the only question before us.

Section 11544 of the Code provides that: "A private person who has arrested another for a public offense, shall, without unnecessary delay, take him before a magistrate or deliver him to an officer." There is no such provision with respect to the duty of an officer making an arrest. True Section 11515 of the Code provides: "No person can be committed to prison for any criminal matter, until examination thereof be first had before some magistrate."

■ In *Ashcraft* v. *State*, *supra*, however, this Court; with respect to the detention of the defendants for 36 hours prior to the time they were taken before a magistrate, said that "there was a temporary holding or arrest for examination purposes, and this is not a commital to prison within the spirit of our statute. Such an examination precedes a committal and an accused may be released before a warrant is issued."

■ We do not understand that the Supreme Court reversed the *Ashcraft Case* because of his detention but owing to the treatment he received during his detention. We think the bare detention of this defendant is not sufficient to render his confession inadmissible.

Since at the time the confession was offered there was nothing to impeach it save the detention of defendant, under authority of the *Ashcraft Case*, the court properly permitted the confession to go to the jury. The defendant gave his version of the confession in detail and the jury had full opportunity to determine its weight.

■ Error is assigned upon the refusal of the trial judge to give a request. The only evidence that such request was made is a statement to that effect in the motion for a new trial. That is not sufficient, as we have repeatedly held, the motion for a new trial being nothing but a pleading. *Sherman* v. *State*, 125 Tenn., 19, 140 S. W., 209. There is no showing as to a request in the bill of exceptions. It is not insisted, with the confession in evidence, that the proof preponderated against the verdict and further discussion of the fact is unnecessary.

It does not appear that the defendant made application to communicate with the lawyer or with any of his friends during his detention. Indeed the only thing that he complains of in his testimony is the rough treatment he says

he received. The jury in accrediting the confession evidently discredited his account of the circumstances under which it was obtained.

The judgment below will be corrected so as to impose an indeterminate sentence of three to eight years, instead of eight years, and, so corrected, affirmed.