**Luther RAMSEY, Plaintiff,**

v.

**Lawrence HAUN et al., Defendants.**

**Civ. A. No. 2219.**

United States District Court
E. D. Tennessee,
Northeastern Division.

Feb. 7, 1969.

Bernard H. Cantor, Johnson City, Tenn., for plaintiff.

Dennis Erwin, Erwin, Tenn., for defendants Haun, Frank Ramsey, Hartford Accident & Indemnity and Jack R. Garland.

John R. Jones, Erwin, Tenn., for defendant Griffith.

## MEMORANDUM OPINION AND ORDER

NEESE, District Judge.

This is an action for damages for the infringement by the defendants Messr. Haun, Frank Ramsey and Calhoun, while acting under the color of Tennessee law, of the civil rights of the plaintiff Mr. Luther Ramsey. 42 U.S.C. § 1983, 28 U.S.C. § 1343(3), (4). The original claim of the plaintiff was that the aforenamed defendants, as state law enforcement officers in Unicoi County, Tennessee, had deprived him of his federal rights to the equal protection of the law and against cruel and unusual punishment. The defendants interposed a motion for a directed verdict at the conclusion of the plaintiff's proof, Rule 50 (a), Federal Rules of Civil Procedure, urging that there was no evidence to support the plaintiff's claim of either of these deprivations.

As no defendant[1] herein owed the plaintiff any duty to provide him medical attention while he was a prisoner in the jail of the aforementioned county, T.C.A. § 41–1115, and as there was no evidence that there was discrimination against Mr. Ramsey in the handling and treatment of intoxicated persons incarcerated in this institution, the motion appeared to have merit. How-

---

[1] Had this jail been declared the county workhouse by the Quarterly Court of Unicoi County, Tennessee, T.C.A. § 41–1202, the defendant sheriff Mr. Haun would have been constituted its superintendent thereby, T.C.A. § 41–1214, and charged with the duty of providing its inmates with medical treatment, T.C.A. § 41–1217.

ever, the totality of the evidence suggested another theory of liability.

The plaintiff Mr. Ramsey is a retired railway employee who is arrested and incarcerated frequently for public intoxication. He appears to have become intoxicated on March 4, 1968, at or near Rock Creek Park near Erwin, in Unicoi County, Tennessee. Cruising Erwin policemen were stopped on their rounds by the plaintiff's son, and the ensuing conversation motivated the officers to drive out Rock Creek road in search of the body of a man lying in a ditch near the roadway.

Mr. Ramsey said he saw the police cruiser approaching him and lay down in the grass of a ditch a few feet from the paved portion of the roadway. It was dark enough for the cruiser's driving lights to be lighted, and the officers did not see Mr. Ramsey until the second time they passed his hiding place. He was "staggering drunk", according to the officers, and was taken to the local jail.[2] There, his custody was assumed by the defendant Mr. Calhoun, as a deputy of his codefendant, former sheriff Haun. Mr. Ramsey was placed in the portion of the jail used to confine intoxicated prisoners. He was the only prisoner therein when admitted about 7:00 o'clock p. m.

Approximately two hours afterward, the same policemen arrested Mr. Herman Rice, a former Erwin policeman who also is arrested and incarcerated frequently for public intoxication, on the same charge and placed him with Mr. Ramsey in the same place. Thereafter, the afore-named defendants received information that Mr. Rice had in his possession a quantity of medicine which would prove harmful if ingested while he was imbibing alcoholic beverages. The three

went to the area of the jail where Messrs. Ramsey and Rice were being held to retrieve the medicine. Mr. Rice proved refractory, and a scuffle ensued involving the three officers and his prisoner.

Messrs. Rice and Ramsey testified that in the melee, Mr. Rice was shoved against Mr. Luther Ramsey by the defendant Mr. Frank Ramsey, and that the two prisoners then fell to the floor of the cell, Mr. Rice rolling over the plaintiff. The latter testified that his leg became numb immediately, and that when the fracas ended, he told the officers that his leg had been injured.[3] Messrs. Haun, Frank Ramsey and Calhoun testified that there was no contact between Mr. Rice or any of them and Mr. Ramsey on this occasion. Each said that the plaintiff was a spectator to the encounter from a position around the corner of a contiguous cell, and that after the medicine was retrieved, Mr. Ramsey mumbled something drunkenly which was unintelligible to them.

After a minimum of four hours, under the custom followed in this jail, intoxicated prisoners are removed from "the drunk tank" to other cells "upstairs". After midnight, the defendant Mr. Calhoun and a trusty transferred Messrs. Ramsey and Rice "upstairs". Mr. Ramsey said he then stated to Mr. Calhoun, "* * * I believe my leg is broke * * *"; that he had examined it and it was swollen and becoming discolored; that he told Mr. Calhoun he needed crutches to assist him in locomotion; and that he was able to negotiate the stairway only with the aid of Mr. Rice.

The following morning the defendant Mr. Calhoun obtained a warrant for the plaintiff's arrest from the general sessions judge of Unicoi County. He came

---

2. This being the only bastile in Unicoi County, any person to be confined in that county must be confined therein. It was customary for each arresting officer to continue the handling of his prisoner until disposition of the pending charge.

3. Mr. Rice testified this statement was: "Boys, you broke my leg!"

to the door of the cell where Mr. Ramsey was incarcerated and said, "Let's go". Mr. Ramsey testified that he did not desire to go to court, because his leg was injured and hurt constantly. He said further that the warrant was not served upon him. Mr. Calhoun testified that the reason Mr. Ramsey gave for not desiring to go to court was: " * * * I don't want to see that judge; I've got 'the shakes'. * * * " He further testified that it was customary not to take prisoners who had been intoxicated before the sessions judge until they, themselves, expressed a readiness.

The plaintiff remained in custody that day and the evening following. On the morning of March 6, 1968, Mr. Walter J. Garland, Jr., the chief deputy sheriff, was advised that the plaintiff needed medical attention. In the absence of any assigned jail physician, Mr. Garland requested members of the local rescue squad to examine Mr. Ramsey. Thereafter, the plaintiff was released to the custody of his son, Lloyd Ramsey, and taken directly to a local hospital. There, upon examination by a physician, he was found to have sustained a small, linear fracture of the left tibia, with the fracture line extending into the face of the knee joint. His knee was swollen, and the first treatment included the aspirating of 90 cc. of blood from the area.

It appeared to the Court that the plaintiff might be entitled to proceed with his claim on the theory that the state officers had deprived him of his right against loss of liberty without due process of law, Fifth Amendment to the federal Constitution, by holding him in custody for about 40 hours without examination [4] as to his criminality by a judge or other magistrate as required by Tennessee procedures. T.C.A. § 40–604. Thus, the motion was overruled at this time and again at the conclusion of all the evidence.

■■ Investigation of Tennessee authorities subsequently demonstrates that the plaintiff cannot proceed in this Court under the theory set forth, however. Tennessee had no statute requiring prompt arraignment. Hardin v. State (1962), 210 Tenn. 116, 134–135 [13], 355 S.W.2d 105, 356 S.W.2d 595. Under Tennessee decisional law, the holding of a person in custody by state officers for 48 hours or more [5] without preliminary examination by a magistrate, nothing else appearing, does not violate either T.C.A. § 40–604 or constitutional due process. State ex rel. Reed v. Heer (1966), 218 Tenn. 338, 343 [3], 403 S.W. 2d 310, citing, inter alia, Dupes v. State (1962), 209 Tenn. 506, 515 [7], 354 S.W. 2d 453. Thus, there was no Tennessee process due the plaintiff in this connection of which he was deprived by the defendants under color of Tennessee law.

The overruling of the defendants' motion for a directed verdict heretofore hereby is vacated, and same hereby is granted. Assent of the jury thereto being unnecessary to make this order effective, Rule 50(a). Federal Rules of Civil Procedure, the complaint herein hereby is

Dismissed.

---

4. The plaintiff would have had difficulty in establishing what part of his pain and suffering and what portion of the expenses he incurred for medical treatment resulted proximately from the deprivation by the defendants of his federal right to due process of law in any event. As all the medical testimony had been presented by deposition, the necessary inferences therefrom might have amounted to speculation by the jury.

5. See Wynn v. State (1944), 181 Tenn. 325, 181 S.W.2d 332.